UNITED STATES DISTRICT COURT                                 b

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION 1:10-CR-00123 |
| VERSUS | JUDGE DRELL |
| JONATHAN S. FRANCISCO | MAGISTRATE JUDGE PEREZ-MONTES |

REPORT AND RECOMMENDATION

Jonathan S. Francisco ("Francisco") filed a Motion to Vacate, Set Aside, or Correct sentence pursuant to 28 US.C. § 2255 (Doc. 98).  Because Francisco has not carried his burden of proving he had ineffective assistance of counsel, the trial judge abused his discretion, or he was subjected to double jeopardy, it is recommended that Francisco's Motion (Doc. 98) be DENIED.

I.   Background

In 2011, Francisco was convicted by a jury in the United States District Court for the Western District of Louisiana, Alexandria Division, on one count of second-degree murder pursuant to 18 U.S.C. § 1111.  Francisco was sentenced to 30 years of imprisonment.  Francisco's conviction was affirmed on direct appeal in 2012 (Doc. 92). See United States v. Francisco, 497 Fed. Appx. 412 (5th Cir. 2012).

In December 2017, Francisco filed this § 2255 Motion to Vacate, Set Aside, or Correct Sentence (Docs. 98, 132), raising the following grounds for relief:

1. Francisco had ineffective assistance of counsel because counsel failed to investigate the facts and defense theories concerning competence for trial or insanity.

2. Francisco had ineffective assistance of counsel because counsel failed to meaningfully communicate with Francisco and failed to subject the prosecution's case to meaningful adversarial testing with respect to the video evidence.

3. The trial judge abused his discretion during Francisco's competency hearing by disallowing him to testify on his own behalf.

4. Because the Court did not appoint Francisco effective counsel, his conviction and sentence are unlawful.

5. Francisco did not have effective assistance of counsel because his counsel did not pursue an insanity defense.

6. Francisco did not have the assistance of counsel when he was questioned in connection with the disciplinary action on which the criminal charge was based.

7. Francisco was subjected to double jeopardy because he was punished for the same offense in both the prison disciplinary proceeding and the district court.

Francisco's § 2255 motion is before the undersigned Magistrate Judge for initial review. See 28 U.S.C. § 2255 and Rule 4(b) of the Federal Rules Governing Section 2255 Proceedings For the United States District Courts.[1]

The facts of this case were set forth by the United States Court of Appeals for the Fifth Circuit at United States v. Francisco, 497 Fed. Appx. 412, 413–16 (5th Cir.2012), as follows:

---

[1] Rule 4(b) states in part: "If it plainly appears from the face of the motion and any annexed exhibits and the prior proceedings in the case that the movant is not entitled to relief in the district court, the judge shall make an order for its summary dismissal and cause the movant to be notified. Otherwise, the judge shall order the United States Attorney to file an answer or other pleading within the period of time fixed by the court or to take such other action as the judge deems appropriate."

On April 29, 2010, Francisco was indicted for second-degree murder in violation of 18 U.S.C. § 1111.  The Government alleged that Francisco had unlawfully killed Jackson while both were inmates at the United States Penitentiary in Pollock, Louisiana....

At trial, the Government introduced a video recording of the attack and also called various prison officials, who presented their version of the events.  Lieutenant Wellington Moore testified that he noticed two inmates step out of the food line in a fighting stance.  He notified other officers of a fight, and Lieutenant Michael Melton and Officer Rocky Deselle ran to the location.  Officer Deselle arrived to see Jackson fall to the ground and Francisco turn and mingle back in the crowd of inmates.  Officer Deselle apprehended Francisco and escorted him away from the scene.  Lieutenant Melton saw Jackson bleeding from the neck and applied pressure to the wound.  He took Jackson to the medical facility, where, less than an hour later, Jackson died.

During the investigation, prison officials recovered a "shank" from the scene.  Lieutenant Melton searched Francisco's cell and observed that someone had taken the locker apart and sharpened an object against the wall, leaving a number of marks.  Lieutenant Melton recognized this as a common method of creating a shank.  He offered that this was likely the method used to create the shank recovered from the incident.  Dr. Susan Garcia performed Jackson's autopsy and determined that the cause of death was a single stab wound to the right side of his neck.  She indicated that "the weapon was most likely a single-edged sharp instrument due to the characteristics of the wound."

The defense witnesses discussed the nature of gangs in Pollock prison.  Officer Patrick Laborde explained that the prison in Pollock had a number of inmates belonging to two prominent gangs, the Crips and the Bloods.  FBI Special Agent Jeffrey Goins testified that Francisco was designated "as a Crip associate" and that Jackson "was one of the leaders of the Crips at Pollock."  Rufus Thompson, an inmate and friend of Francisco's, testified that Francisco wanted to drop out of the Crips.  He explained that some time before the incident Francisco had challenged Jackson to a fist fight in an attempt to leave the gang, but Jackson declined, indicating that he wished to use weapons.  After that, Thompson felt that Francisco became paranoid about something happening to him.  Francisco himself also testified, but his testimony was mostly incoherent.

II.  Law and Analysis

  A.  Rule 8(a) Resolution

This court is able to resolve the merits of this Section 2255 application without the necessity of an evidentiary hearing because there is no genuine issue of material fact that is relevant to the claims of the petitioner, and the State court records provide the required and adequate factual basis necessary to the resolution of the Section 2255 application.  See U.S. v. Green, 882 F.2d. 999, 1008 (5th Cir. 1989); Section 2255 Rule 8(a).

  B.  The Law of §2255 Actions

There are four grounds upon which a federal prisoner may move to vacate, set aside, or correct his sentence: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose the sentence; (3) the sentence exceeds the statutory maximum sentence; or (4) the sentence is "otherwise subject to collateral attack."  See 28 U.S.C. § 2255; United States v. Cates, 952 F.2d 149, 151 (5th Cir.), cert. den., 504 U.S. 962 (1992). The scope of relief under § 2255 is consistent with that of the writ of habeas corpus. See Cates, 952 F.2d at 151; see also United States v. Placente, 81 F.3d 555, 558 (5th Cir. 1996).

Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice. Nonconstitutional claims that could have been raised on direct appeal, but were not,

may not be asserted in a collateral proceeding. See United States v. Vaughn, 955 F.2d 367, 368 (5th Cir. 1992); see also United States v. Ressler, 54 F.3d 257, 259 (5th Cir. 1995). A collateral challenge may not do service for an appeal. After conviction and exhaustion and waiver of any right to appeal, the federal courts are entitled to presume that the defendant stands fairly and finally convicted. See United States v. Shaid, 937 F.2d 228, 231-32 (5th Cir. 1991), cert. den., 502 U.S. 1076 (1992). Even if a defendant raises a constitutional error, he may not raise an issue for the first time on collateral review without showing both cause for his procedural default and actual prejudice resulting from the error. See United States v. Mimms, 43 F.3d 217, 219 (5th Cir. 1995).

Moreover, it is settled in this circuit that issues raised and disposed of in a previous appeal from an original judgment of conviction are not considered in §2255 motions. See United States v. Kalish, 780 F.2d 506, 508 (5th Cir.), cert. den., 476 U.S. 1118 (1986); see also United States v. Fields, 761 F.3d 443, 466, 482 (5th Cir. 2014), cert. den., 135 S. Ct. 2803 (U.S. 2015); United States v. Segler, 37 F.3d 1131, 1134 (5th Cir. 1994).

    C.    Francisco did not have ineffective assistance of counsel.

Francisco contends he had had ineffective assistance of counsel at trial.

To prevail on a habeas complaint of ineffective assistance of counsel, a complainant must meet the two-pronged test set forth by the Supreme Court in Strickland v. Washington, 466 U.S. 668, 687 (1984): (1) counsel's performance was deficient; and (2) the deficient performance prejudiced the defense. A defendant is

prejudiced if there is a reasonable probability that, but for counsel's unprofessional errors, the results of the proceedings would have been different. To make that determination, the court must examine the proceedings as a whole, giving due consideration to the weight of the evidence supporting the verdict and evaluating the alleged failings of counsel in that total setting. The court does not assess any alleged error in isolation. In an examination of state proceedings under 28 U.S.C. § 2254, the court will not reject an adjudication on the merits unless the action by the state court is found to be contrary to, or an unreasonable application of, clearly established federal law, or the state court's determination of the facts is manifestly unreasonable in light of the evidence. See Jones v. Cain, 227 F.3d 228, 230 (5th Cir. 2000).

A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight and to evaluate the conduct from counsel's perspective at the time. See Dowthitt v. Johnson, 230 F.3d 733, 743 (5th Cir. 2000), cert. den., 532 U.S. 915 (2001) (citing Strickland, 466 U.S. at 689). Thus, the court's scrutiny of counsel's performance is highly deferential. The court must be particularly wary of arguments that essentially come down to a matter of degrees, such as whether counsel investigated enough or presented enough mitigating evidence. Those questions are even less susceptible to judicial second-guessing. See Dowthitt, 230 F.3d at 743 (citing Kitchens v. Johnson, 190 F.3d 698, 703 (5th Cir. 1999)).

In a habeas proceeding alleging ineffective assistance of counsel, the petitioner has the burden of proof. See U.S. v. Chavez, 193 F.3d 375, 378 (5th Cir. 1999) (citing Clark v. Collins, 19 F.3d 959, 964 (5th Cir. 1994), cert. den., 513 U.S. 966 (1994)).

> 1. **Francisco did not have ineffective assistance of counsel with respect to his competency for trial and an insanity defense.**

Francisco contends his attorney failed to investigate the facts and defense theories concerning competence for trial or insanity.

Counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. See Nelson v. Hargett, 989 F.2d 847, 850 (5th Cir. 1993) (citing Strickland, 466 U.S. at 691). A determination of whether an investigation is reasonably adequate depends upon a variety of factors, including the number of issues in the case, the relative complexity of those issues, the strength of the Government's case, and the overall strategy of trial counsel. See Baldwin v. Maggio, 704 F.2d 1325, 1333 (5th Cir. 1983), cert. den., 467 U.S. 1220 (1984).

However, bare allegations do not suffice. A defendant or petitioner who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial. See Nelson, 989 F.2d at 850 (citing United States v. Green, 882 F.2d 999, 1003 (5th Cir. 1989)). Under Strickland, even where trial counsel has failed to adequately investigate a case, a defendant must demonstrate that he has been prejudiced by his counsel's failure. See Lockhart v. McCotter, 782 F.2d 1275, 1282 (5th Cir. 1986), cert. den., 479 U.S. 1030 (1987). To show prejudice, the petitioner

must prove that an alleged breach of his attorney's duty to investigate resulted in an actual and substantial disadvantage to the course of his defense. See Baldwin, 704 F.2d at 1333.

Francisco was evaluated for competency to stand trial by two psychologists and found competent despite possible mental illness. (Doc. 14) Francisco was also evaluated for a potential insanity defense. Two psychologists found Francisco did not have a mental disorder that: (1) precluded him from understanding the proceedings and assisting in his defense; or (2) precluded him from understanding the nature, quality, and wrongfulness of his behavior at the time of the offense. (Doc. 14). Defense counsel represented Francisco at his competency hearing, questioned his witness, and argued on his behalf (Doc. 78). Therefore, Francisco's attorney clearly investigated those defenses. There was no evidence to support Francisco's claims of incompetence and insanity.

The Magistrate Judge denied Francisco's request to testify at the competency hearing because a potentially incompetent person cannot testify with credibility. The determination of his competence was made on the basis of the expert reports. Francisco raised this claim on direct appeal and it was held to be meritless.

Therefore, Francisco did not have ineffective assistance of counsel as to his competency defenses.

Francisco's attorney also investigated an insanity defense by having Francisco evaluated for that, as well. Since there was no evidence to support an insanity

8

defense, Francisco's attorney reasonably abandoned that defense. Therefore, Francisco did not have ineffective assistance of counsel as to an insanity defense.

### 2. Francisco did not have ineffective assistance of counsel with respect to the video evidence.

Francisco also contends had ineffective assistance of counsel because counsel failed to meaningfully communicate with Francisco and failed to subject the prosecution's case to meaningful adversarial testing with respect to the video evidence. Francisco contends his attorney failed to argue that the video does not show he committed the offense.

Lieutenant Moore testified regarding the government's prison yard video. Lieutenant Moore testified that, in the crowd of inmates approaching food services from the yard, he saw "two hands go up" and go down again, then go up and down again. (Doc 85, pp. 31-32). Lt. Moore testified that Francisco was the inmate who raised his hands twice. (Doc. 85, p. 37). Francisco and Jackson squared off into a fighting stance and Moore radioed that there was a fight in the yard (Doc. 85, p. 32). Jackson's white shirt began turning red and Francisco stepped away and walked back to the line (Doc. 85, pp. 32, 36). However, on cross-examination by defense counsel, Lt. Moore clarified that he was not sure whether the two hands that went up were from both from the same individual (Francisco) or not (Doc. 85, pp. 39-40). Lt. Moore testified that he did not see a weapon (Doc. 85, p. 40).

Officer Deselle testified that he saw two inmates in an altercation. (Doc. 85, p. 42). Officer Deselle testified he saw Inmate Jackson fall to the ground and Inmate Francisco turned and left the fight, mingling with the crowd. (Doc. 85, p. 43). Officer

9

Deselle stopped and restrained Francisco, patted him down, and searched him with a metal detector wand. (Doc. 85, pp. 44, 48). Officer Desselle did not find a weapon on Francisco. (Doc. 85, pp. 48-50). On cross-examination by defense counsel, Officer Deselle testified that he did not see a weapon during the fight, did not find a weapon where the fight took place, and did not find a weapon on Francisco. (Doc. 85, pp. 47-50).

Lieutenant Melton testified that he investigated the incident. (Doc. 85, p. 74). Lt. Melton testified the locker in Francisco's cell had been torn apart and that someone had been making homemade weapons in his cell. (Doc. 85, p. 74). Lt. Melton identified the metal shank that was recovered from the yard after Inmate Jackson was stabbed. (Doc. 85, p. 79).

Agent Goins testified that a metal shank was recovered from the yard after the altercation (Doc. 85-1, p. 67), and another shank was recovered from Francisco the evening following the incident (Doc. 85-1, pp. 59, 62). A plastic shank was found in Jackson's cell. (Doc. 85-1, p. 6).

Defense counsel brought out salient points in Francisco's favor on cross-examination that showed no one saw Francisco stab Jackson. Francisco has not alleged what questions which attorney failed to ask, or what objections his attorney failed to raise with respect to the video evidence that would have further aided his defense. Francisco has not carried his burden of showing his attorney erred by not "testing" the Government's video evidence.

> 3. **The Magistrate Judge did not err in not allowing Francisco to testify at his competency hearing.**

Francisco argues that the trial judge abused his discretion during Francisco's competency hearing by not allowing him to testify on his own behalf.

The Fifth Circuit considered this issue on direct appeal of Francisco's conviction and found Francisco had not been denied any substantial rights when he was not afforded an opportunity to testify at his competency hearing. See Francisco, 497 Fed. Appx.at 417–18. Because the Fifth Circuit considered and disposed of this issue on direct appeal, this Court is barred from reconsidering it on collateral review. See Kalish, 780 F.2d at 508; see also Fields, 761 F.3d at 466, 482.

> 4. **Francisco's attorney did not err in not asserting an insanity defense.**

Francisco contends his attorney was ineffective for failing to pursue an insanity defense. Francisco's attorney had Francisco examined prior to trial for insanity at the time of the commission of the offense. There was no evidence of serious mental illness at the time of or prior to the offense, and Francisco's diagnosis at that time was "no mental disorder."[2] (Doc. 14, p. 17). The psychologists found Francisco "was aware of the nature, quality, and wrongfulness of his behavior" and "knew it was both wrong and illegal to harm or kill another." (Doc. 14, p. 17).

A conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that

---

[2] Francisco contends he was diagnosed with schizophrenia after he was convicted. He has not provided evidence to support that claim. Moreover, the existence of a mental disease or defect, standing alone, does not constitute a defense. See 18 U.S.C. § 17.

11

it permeates the entire trial with obvious unfairness. See Crane v. Johnson, 178 F.3d 309, 314 (5th Cir. 1999), cert. den., 528 U.S. 947 (1999) (citing Garland v. Maggio, 717 F.2d 199, 206 (5th Cir. 1983)). Francisco's attorney plainly investigated an insanity defense and apparently concluded there was no evidence to support it. Because Francisco's attorney made an informed decision in rejecting an insanity defense, Francisco has not shown his attorney erred in doing so.

Francisco has not carried his burden of proving he had ineffective assistance of counsel with regard to an insanity defense.

### 5. Francisco did not have ineffective assistance of counsel.

Francisco next contends that, because the Court did not appoint him an effective attorney, his conviction and sentence are unlawful. As explained above, Francisco has not carried his burden of proving his attorney erred and that he was prejudiced by those errors. It is noted that Francisco's attorney argued self-defense at trial and presented a defense witness (other than Francisco) to support that defense.

### D. Francisco's Sixth Amendment right to an attorney and Fifth Amendment right against self-incrimination were not violated.

Francisco contends he was subjected to an "unlawful custodial interrogation" because he was not given Miranda[3] warnings and did not have the assistance of counsel when he was questioned in connection with the disciplinary action on which the criminal charge was based. (Doc. 132). Francisco contends that the prison

---

[3] Miranda v. Arizona, 384 U.S. 436 (1966).

officials already knew he "was being charged with a crime" before they pursued prison disciplinary action and questioned him. Francisco alleges the testimony he gave at his disciplinary hearing was used against him in his criminal trial. (Doc. 132). Francisco also contends his counsel was ineffective for failing to object to that evidence at trial. (Doc. 132).

A person's Sixth and Fourteenth Amendment rights to counsel attach only at or after the time that adversarial judicial proceedings have been initiated against him. U.S. v. Gouveia, 467 U.S. 180, 188 (1984). The Sixth Amendment right to counsel does not attach until such time as the government has committed itself to prosecute, and the adverse positions of government and defendant have solidified. See Moran v. Burbine, 475 U.S. 412, 432 (1986) (citing Gouveia, 467 U.S. at 189). Absent a valid waiver, the defendant has the right to the presence of an attorney during any interrogation occurring after the first formal charging proceeding, the point at which the Sixth Amendment right to counsel initially attaches. See Moran, 475 U.S. at 428 (citing Gouveia, 467 U.S. at 187). The core purpose of the counsel guarantee is to assure aid at trial when the accused is confronted with both the intricacies of the law and the advocacy of the public prosecutor. See Gouveia, 467 U.S. at 188 (citing United States v. Ash, 413 U.S. 300, 309 (1973)).

A defendant is not entitled to a preindictment attorney or private investigator. See Gouveia, 467 U.S. at 192. There is no right to counsel where interrogation sessions that yield inculpatory statements take place *before* the initiation of adversary judicial proceedings. See Moran, 475 U.S. at 428 (citing Gouveia, 467 U.S.

at 192);[4] see also Moore v. Melvin, 42 F.3d 642, *2 (5th Cir. 1994) (inmate-defendant did not have a right to counsel during questioning before adversarial judicial proceedings were initiated); U.S. v. McClure, 786 F.2d 1286, 1290 (5th Cir. 1986) (inmate-defendant's Sixth Amendment right to counsel was not violated where he confessed to murder before adversarial judicial proceedings had commenced). After the first charging proceeding, the government may not deliberately elicit incriminating statements from an accused outside of the presence of counsel. See Moran, 475 U.S. at 431.

In Gouveia, federal inmates who had murdered a fellow inmate were placed in administrative detention during an investigation by prison officials prior to formal indictment. The United States Supreme Court held the inmate-defendants are not constitutionally entitled to the appointment of counsel before adversarial judicial proceedings are initiated against them. See Gouveia, 467 U.S. at 188 (citing Kirby v. Illinois, 406 U.S. 682, 688-89 (1972)).

On April 29, 2010, Francisco was charged by indictment with intentionally killing inmate Jackson on July 14, 2008 (Doc. 1). The indictment was the beginning of the adversarial judicial proceedings against Francisco. Francisco does not allege or show that he was questioned by prison officials after he was charged by indictment. Instead, Francisco contends he was questioned by the prison officials before they turned him over to federal law enforcement officials. (Doc. 132, p. 3). Francisco also

---

[4] Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply. See Wolff v. McDonnell, 418 U.S. 539, 556 (1974) (citing Morrissey v. Brewer, 408 U.S. 471, 488 (1972)).

complains he was questioned by F.B.I. agents prior to his disciplinary hearing. (Doc. 126, p. 1). However, interrogation by law enforcement is not the initiation of adversarial judicial proceedings. Adversary judicial proceedings begin "by way of formal charge, preliminary hearing, indictment, information, or arraignment." See United States v. Ewing, 334 Fed. Appx. 697, 698 (5th Cir. 2009) (citing Kirby v. Illinois, 406 U.S. 682, 689 (1972)).

Nor has Francisco shown that he gave incriminating statements to prison officials (or anyone else) that were used against him at trial. The record of Francisco's criminal trial shows the Government did not use any incriminating statements by Francisco. Therefore, Francisco has not carried his burden of proving his right to counsel was violated.

Francisco has also not shown his Fifth Amendment right against self-incrimination was violated. Francisco was also not entitled to Miranda warnings from the prison officials. Because prison disciplinary hearings are not part of a criminal prosecution, correctional officers are not required to issue Miranda warnings before a prison disciplinary hearing. See Leflore v. Carroll-Montgomery RCF, 2014 WL 1276494 at *3 (N.D. Miss. 2014) (citing Wolff, 418 U.S. at 556).

Moreover, the Fifth Amendment guarantees that "[n]o person ... shall be compelled in any criminal case to be a witness against himself." See New York v. Quarles, 467 U.S. 649, 654 (1984). The Miranda Court presumed that interrogation in certain custodial circumstances is inherently coercive and held that statements made under those circumstances are inadmissible unless the suspect is specifically

15

informed of his Miranda rights and freely decides to forgo those rights. See Quarles, 467 U.S. at 654. The prophylactic Miranda warnings, therefore, are not themselves rights protected by the Constitution, but are instead measures to insure the right against compulsory self-incrimination is protected. See Quarles, 467 U.S. at 654 (citing Michigan v. Tucker, 417 U.S. 433, 444 (1974)). A mere failure to give Miranda warnings does not, by itself, violate a suspect's constitutional rights or even the Miranda rule. See United States v. Patane, 542 U.S. 630, 641 (2004). Potential violations occur only upon the admission of unwarned statements into evidence at trial. See Patane, 542 U.S. at 641.

Because Francisco has not pointed to any incriminatory statements he made to anyone that were used against him at trial, he has not shown his Fifth Amendment right against self-incrimination was violated.

### E. Francisco was not subjected to double jeopardy.

Francisco contends he was subjected to double jeopardy because he was punished for the same offense (killing Jackson) in both the prison disciplinary proceeding and the district court.

Prison disciplinary hearings do not bar future criminal prosecutions. See United States v. Shepard, 78 Fed. Appx. 387, 388 (5th Cir. 2003) (citing United States v. Galan, 82 F.3d 639, 640 (5th Cir. 1996), cert. den., 519 U.S. 867 (1996)). Prison discipline falls outside the scope of double jeopardy. See Copeland v. Livingston, 464 Fed. Appx. 326, 331 (5th Cir. 2012).

Therefore, Francisco's prison disciplinary proceeding and criminal prosecution for the same incident did not subject Francisco to double jeopardy.

### III. Conclusion

Base on the foregoing, IT IS RECOMMENDED that Francisco's § 2255 Motion (Doc. 98) be DENIED.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the District Judge at the time of filing. No other briefs (such as supplemental objections, reply briefs etc.) may be filed. Providing a courtesy copy of the objection to the magistrate judge is neither required nor encouraged. Timely objections will be considered by the district judge before he makes a final ruling.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See Douglass v. United Services Automobile Association, 79 F. 3d 1415 (5th Cir. 1996).

Pursuant to Rule 11(a) of the Rules Governing Section 2255 proceedings for the United States District Courts, this Court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Unless a Circuit Justice or District Judge issues a certificate of appealability, an appeal may not be taken to the court of appeals. Within fourteen (14) days from service of this Report and Recommendation, the parties may file a memorandum setting forth arguments on whether a certificate of appealability should issue. See 28 U.S.C. § 2253(c)(2). A courtesy copy of the memorandum shall be provided to the District Judge at the time of filing.

THUS ORDERED AND SIGNED in Chambers at Alexandria, Louisiana on this __1st__ day of May, 2019.

Joseph H.L. Perez-Montes
United States Magistrate Judge